## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| David B. Gray,<br>    Petitioner, | )<br>)<br>) |
| v. | )    No. 1:23cv1275 (RDA/JFA) |
| Harold W. Clarke,<br>    Respondent.[1] | )<br>)<br>) |

### MEMORANDUM OPINION

David B. Gray ("Petitioner" or "Gray"), a Virginia inmate proceeding *pro se*, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his January 9, 2020 convictions in the Circuit Court for the City of Hampton, Virginia for malicious wounding by caustic substance and assault and battery of a family member. On December 8, 2023, Respondent filed his Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. Dkt. Nos. 8-10. Petitioner was advised of the opportunity to file responsive materials in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), Dkt. No. 11, and he has responded. Dkt. Nos. 12-15.[2] For the reasons that follow, Respondent's Motion to Dismiss must be granted, and the Petition will be dismissed with prejudice.

### I. Procedural History

Gray is in custody pursuant to the January 9, 2020 judgement of the Circuit Court for the

---

[1] Chadwick Dotson, Director of the Virginia Department of Corrections moves this Court to substitute him as the party respondent in this habeas corpus matter, in place of Harold W. Clarke. Dkt. No. 10 at 1, n.1. Chadwick Dotson was appointed to serve as the Director of the Virginia Department of Corrections effective September 8, 2023. *See* Fed. R. Civ. P. 25(d). The motion will be granted.

[2] Petitioner filed a "Motion to Vacate," as one of his responsive pleadings. Dkt. No. 14. It is, in essence, a brief in opposition to Respondent's Rule 5 Answer and Motion to Dismiss. Accordingly, it will be treated as a brief in opposition and to the extent it could be construed as a motion, the motion is denied.

City of Hampton. Dkt. No. 10-1. On October 28, 2019, a jury convicted Gray of malicious wounding by caustic substance, in violation of Virginia Code § 18.2-52, and assault and battery of a family member, in violation of Virginia Code § 18.2-57.2. Dkt. No. 10-2.[3] The judgment order imposed a sentence of six years in prison on the felony malicious wounding conviction and twelve months in jail for the misdemeanor assault and battery of a family member conviction.

Gray, by counsel, filed a petition for appeal in the Court of Appeals of Virginia, which raised three assignment of errors:

> 1) The trial court erred in denying appellant's motion to strike the charge of maliciously causing bodily injury by means of lye, acid, or other caustic substance, as the evidence did not establish that the substance used by the appellant was a lye, acid, explosive, fire, or other caustic substance as defined by Virginia Code § 18.2-52.
>
> 2) The trial court erred in denying appellant's proffered jury instruction defining a caustic substance as "a substance that burns or destroys living tissue by chemical action," and accepting the Commonwealth's instruction which defined caustic substance as a "substance causing irritation or a burning sensation upon contact with the skin," as the defendant's instruction accurately stated the law defining caustic substance as it applies to Virginia Code § 18.2-52 and the Commonwealth's instruction did not accurately state the law.
>
> 3) The trial court erred in admitting testimony from Officer Naum regarding what the appellant told him that appellant's domestic violence counselor had said, as the statement itself was hearsay and the fact that appellant had a domestic violence counselor was more prejudicial than probative.

Dkt. No. 10-4 at 5-6. A judge of the Court of Appeals of Virginia denied the petition in a per curiam order dated September 8, 2020. *Id.* at 35-41. In the order denying the petition, the court summarized the evidence as follows:

> The evidence established that a few minutes after midnight on March 27, 2019, Hampton Police Officers Naum and Tatum were dispatched to investigate a reported domestic argument at an apartment complex in Hampton. Arriving at the

---

[3] On October 24, 2019, Gray, proceeding *pro se*, filed a "complaint" in this Court. The Court construed the complaint and accompanying pleadings as an attempt to challenge a state conviction and granted Gray leave to file a § 2254 petition. On December 19, 2019, Gray filed an amended pleading on a § 2254 form. After reviewing the § 2254 petition, the Court dismissed it without prejudice because Gray had failed to exhaust his state remedies. *Gray v. Unknown*, No. 1:19cv1354 (E.D. Va. Jan. 27, 2020).

2

> complex, the officers went to the apartment where they heard the raised voices of a man and woman. Appellant answered Naum's knock on the door and asked why the officers were there. When Naum replied that they had heard loud voices, appellant said that he had been arguing with his girlfriend, S.G., and that he had raised his voice to be heard over her loud voice. Naum told appellant that the officers would not leave the premises until they had determined that everyone was safe. Appellant then directed S.G. to come to the door. Naum smelled alcohol on appellant's breath. Appellant later admitted to Naum that he had "two or three" drinks at a bar earlier that evening.
>
> As S.G. walked to the front door, Naum saw that she had a piece of cloth around her mouth and dried blood on her hand. When she came closer, Naum saw that she had "redness" on her face, bleeding around her mouth, and swollen lips. S.G. was "very shy, very timid, and . . . very hesitant" to tell Naum how she had been injured. She said she had fallen, was "fine," and did not need medical attention. However, when Naum and Tatum questioned S.G. separately out of appellant's presence, she admitted that he had assaulted her. After appellant was arrested and removed from the apartment, S.G. gave a written statement, describing in detail appellant's attack on her. S.G. said that appellant followed her into the bathroom where he hit her on the side of her head with a container of "Lysol" and sprayed her face.
>
> S.G. testified that she and appellant had been together for six years and had two children, ages two and four years. She said that appellant began punching and kicking her in the kitchen. Then he followed her into the bathroom, cornered her between the toilet and the wall, and hit her in the head with a spray bottle containing a "Lysol bleach mixture." As her head was turned to the right, she "felt a spritz along the side of [her] face" from the bottle. S.G. said that there was a "redness" on her face from the spray and that she felt "a burning sensation, itching, and things like that" when she was talking to Naum. S.G. testified that appellant obtained the "Lysol" from his job and that they mixed it with household bleach to use as a cleaning solution. The police did not recover the bottle.

*Id.* at 36-37. A three-judge panel of the court adopted the September 8, 2020 order on December 1, 2020. *Id.* at 45.

Gray, by counsel, filed a petition for appeal in the Virginia Supreme Court that raised the first two assignments of error denied by the Court of Appeals of Virginia. Dkt. No. 10-5 at 6-7. The Virginia Supreme Court refused Gray's petition for an appeal on August 31, 2021. *Id.* at 21.

On October 20, 2020, while his direct appeal was still pending, Gray, proceeding *pro se*, filed a petition for a writ of habeas corpus in the state circuit court, which raised three claims.[4]

1) That Commonwealth failed to provide exculpatory evidence in violation of *Brady v. Maryland*,[5] because the substance used against the victim was never recovered from the scene or entered into evidence;

2) The evidence was insufficient to prove that the substance allegedly used against the victim fit the definition of "caustic substance" because there was no evidence that it was "destructive to living tissue;" and

3) The prosecutor committed misconduct by coercing and coaching witnesses to provide statements, violating Gray's 14th Amendment right to a fair trial, and creating unnecessary delays in order to detain Gray unlawfully.

Dkt. No. 10-6 at 2-3. On September 15, 2021, the circuit court found that Claims 1 and 3 were barred from consideration in habeas pursuant to the rule in *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S. E. 2d 680, 692 (1974) ("A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction. Since the issue of the alleged constitutionally improper pretrial identification could have been raised and adjudicated at petitioner's trial and upon his appeal to this court, Parrigan had no standing to attack his final judgment of conviction by habeas corpus."). Claim 2 was dismissed pursuant to a similar default. *See Pettus v. Peyton*, 207 Va. 906, 911, 153 S.E.2d 278, 281 (1967) ("It is well settled that [a challenge to the sufficiency of the evidence] must be asserted in a direct appeal from, or writ of error to, the original judgment and cannot be made by a collateral attack on that judgment in a habeas corpus proceeding."). Gray did not appeal the dismissal of his state habeas petition.

---

[4] The petition was filed on October 28, 2020, but it was dated October 20, 2020, which is the earliest it could have been given to a correctional officer to be mailed. *Houston v. Lack*, , 487 U.S. 266, 276 (1988) (a matter is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

On September 12, 2022, Gray, proceeding *pro se*, mailed his second state habeas petition to the circuit court and the clerk marked it filed on October 17, 2022.[6] The petition contained three claims.

    A. Prosecution misconduct—the prosecutor did not provide a correct jury instruction for the charge of malicious wounding by caustic substance, specifically the definition of "caustic;" the prosecutor failed to provide discovery; and the prosecutor coached and coerced witnesses.

    B. Ineffective assistance of counsel—counsel failed to obtain and review discovery; counsel failed to present exculpatory evidence to petitioner; counsel failed to investigate and present evidence at trial; counsel failed to file a motion for discovery and other motions; counsel failed to object to a video being viewed outside the presence of the jury that showed petitioner was innocent; and counsel made prejudicial statements at trial and on appeal.

    C. "The trial court refused the jury question in regard[] to the crime of 18.2-52 and removed the jury during [a] video review [that] clearly show[ed] petitioner [was] innocen[t] [of] the crime charged."

Dkt. No. 10-9 at 3-4. On May 2, 2023, the circuit court found that Petitioner's claims had no merit and dismissed the petition. Specifically, the circuit court found that the term "caustic" was defined consistent with its plain meaning; Petitioner had failed to state a claim regarding exculpatory evidence and the video because he had alleged "no facts to support" his claims; and the allegations that counsel was ineffective were disagreements over trial strategy. Dkt. No. 10-10 at 1-2. Gray did not appeal the dismissal of his second state habeas petition.

**II. Petitioner's Federal Claims**

---

[6] In the second state habeas proceedings, Gray filed two pleadings stating he filed his state habeas petition on September 15, 2022. One pleading, dated March 20, 2023, states Gray's state habeas petition was "submitted and filed" on September 15, 2022. A second pleading, dated July 14, 2023, states it was "filed [on] 9/15/2022." A loose page, which may have been part of the second state petition states the petition was mailed on "9/12/22." For purposes of this Memorandum Opinion, the Court will use the September 12, 2022 date.

On August 30, 2023,[7] Gray, proceeding *pro se*, filed his federal habeas petition pursuant to 28 U.S.C. § 2254, in which he raises four grounds for relief:

1) "Due Process Violation. The trial court erred denying jury instruction defining caustic substance charge of 18.2-52. Trial court denied motion to strike malicious wounding by caustic substance charge 18.2-52. There was no physical or circumstantial evidence to support the crime charged of 18.2-52. Va. Sup. Ct. R. 3A:11 Virginia Criminal Law and Procedure Rule 60.1(1). It appears petitioner was convicted under code 18.2-51 this further shows insufficient evidence."

2) "Clerical Mistakes. Trial Court erred denying jury instruction on 18.2- 52 when sentencing order and criminal order code section read 18.2-51. A structural error is a defect impairing petitioners Constitutional Rights under the 5th and 6th Amendments. Va. Code Ann. 8.01-428(B). A caustic substance was never recovered or entered into evidence, in fact there was no medical aid, no medical reports or expert witnesses. *See* criminal and sentencing order, criminal order (structural error) attached dated February 6, 2020. The court was given no evidence from which it could conclude a caustic substance was used."

3) "Ineffective Assistance. The prejudice component of the ineffective assistance of counsel before and during trial shows that the counsel performance was deficient, making the trial unreliable and the proceeding fundamentally unfair. Inadvertent omission when multiple requests were made for discovery and motions to be filed. Va. Sup. Ct. R. PT. 6, Sec. 2, 8.4(e). Professional misconduct. If not for counsel errors the result would have been different."

4) "Structural Error. During sentencing phase, Commonwealth made improper arguments during trial bearing on critical issues thereby impairing petitioner's constitutional rights under 5th and 6th amendments. Virginia has defined clear and convincing evidence as that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It does not mean clear and unequivocal."

Dkt. No. 1 at 5, 6-7, 8, 10.[8]

### III. Statute of Limitations

---

[7] The Petition was filed September 20, 2023, but it was executed and delivered to the mailroom on August 30, 2023. Dkt. No. 1 at 14, 15; *see Houston*, 487 U.S. at 276 (that "filing turn[s] on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule").

[8] The Fourth Circuit has held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

Respondent moves the Court to dismiss the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state–created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post–conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

*A. Statutory Tolling*

Here, Gray's direct appeal concluded on August 31, 2021. Because Gray did not petition the United States Supreme Court for a writ of certiorari, his conviction became final for the purposes of § 2244(d)(1) 90 days after the Supreme Court of Virginia refused his appeal, or on Monday, November 29, 2021. *See Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires"). Gray had one year from that date, or until Tuesday, November 29, 2022, to file his § 2254 petition.

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Gray's first state habeas was filed while his direct appeal was still pending and it was dismissed on September 21, 2021 before his direct appeal became final on November 29, 2021.

7

The first state habeas petition, therefore, had no effect on the calculation of the federal statute of limitations. Gray's second state habeas petition was mailed on September 12, 2022 and was pending until it was dismissed on May 2, 2023.

Although the second state petition appears to be successive and untimely under state law, the circuit court did not dismiss the petition as successive or as untimely. Consequently, the period between November 29, 2021 and September 12, 2022 (287 days) are counted against the one-year federal statute of limitations. On September 12, 2022, the clock was tolled until the circuit court dismissed his second state petition on May 2, 2023. Allowing for the thirty-day period to note an appeal, Gray's clock began to run again on June 1, 2023. At that point, the 78 days Petitioner had to file his federal petition began to run again because Petitioner did not appeal the dismissal. If the remaining 78 days are added, Gray had to file his federal habeas petition on or before Friday, August 18, 2023. Because he mailed his federal habeas petition to this Court on August 30, 2023, absent equitable tolling, Gray's federal petition is untimely.[9]

*B. Equitable Tolling*

---

[9] Petitioner also filed a motion to vacate ("Motion") in the circuit court, which he executed on August 25, 2023. Dkt. 1-2 at 26. The Motion was included in the manuscript record forwarded by the state court clerk and was stamped filed on September 5, 2023. The envelope Petitioner used was marked received by the correctional facility on August 28, 2023 and was postmarked August 29, 2023. The manuscript record, which is nearly two inches thick, has a Table of Contents, but the Table of Contents only includes the first 69 pages. The several hundreds of pages related to the criminal proceedings, which were not listed in the Table of Contents, included case-related documents, correspondence, and court orders. The last non-listed item in the manuscript record is the Motion. The Motion is sworn to on August 25, 2023. After the end of the bound portion of the manuscript record is an envelope with the Commonwealth's exhibits (photographs) of the victim's injuries; and the prosecutor's response to the Motion filed on September 22, 2023. There was no ruling by the circuit court, from which the Court concludes that the Motion is still pending.

Because the Motion, pending or not, could not have been filed before the federal statute of limitations lapsed on August 18, 2023, when the statute of limitations expired, it cannot toll the statute of limitations. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."); *see also Trapp v. Spencer*, 479 F.3d 53, 58-59 (1st Cir. 2007) (tolling "does not reset the clock on the limitations period . . . but merely stops it temporarily, until the relevant applications for review are ruled upon"), *abrogated on other grounds by Holmes v. Spencer*, 822 F.3d 609 (1st Cir. 2016).

Petitions pursuant to 28 U.S.C. § 2254 are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645-46 (2010). *Holland* "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace*, 544 U.S. at 418). An inmate asserting equitable tolling "bears a strong burden to show specific facts" demonstrating that he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). Generally, the petitioner is obliged to specify "the steps he took to diligently pursue his federal claims." *Id.* at 930 (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)).

Petitioner does not seek either statutory or equitable tolling and indicates in his petition that he calculated that he had until September 15, 2023 to file his federal petition. Dkt. No. 1 at 13.[10] Petitioner's failure to correctly calculate the limitations period is no more than ignorance, which does not warrant equitable tolling. *See United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling. . . ."). As the Fourth Circuit has held, the fact that a *pro se* petitioner "did not understand how the statute of limitations operated in his case," and his "ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (2004); *see also id.* ("Stated differently, [petitioner]'s misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control.").[11] Petitioner did not seek equitable tolling and a review of

---

[10] Petitioner concluded he had until September 15, 2023 to file his federal habeas because he filed his state habeas on September 15, 2022. *Id.* The Court started the tolling on September 12, 2022. *See, supra* at 7.

[11] *See Pearson v. North Carolina*, 130 F. Supp.2d 742, 744 (W.D.N.C. 2001) ("ignorance of the proper calculation of the period of limitation does not warrant equitable tolling"); *see also Rouse v. Lee*, 339 F.3d 238, 248-49 (4th Cir. 2003) (holding that a party's incorrect interpretation of AEDPA's statute of limitations did not present extraordinary circumstances to warrant equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999) ("Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.").

9

the record did not find a basis for equitable tolling, especially given the fact that Gray miscalculated his filing date.

*C. Structural Error*

Gray included the phrase "structural error" in Claim 4, but it is unclear why he has inserted that phrase because Claim 4, prosecutorial misconduct, is not a recognized category of structural error. The Court assumes he is arguing the claim cannot be defaulted or otherwise barred. In this case, it is not necessary to decide that question because Petitioner has not raised a matter that is classified as a structural error.[12] Improper argument by a prosecutor, as alleged in Claim 4 in his federal § 2254 petition, amounts only, at best, to trial error.

In Claim 4, Gray alleges that during sentencing the prosecutor made "improper arguments . . . on critical issues impairing petitioner's 5th and 6th amendment rights." Dkt. No. 1 at 10. The claim is conclusory in that it does not identify what the prosecutor argued during sentencing that was allegedly improper. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (bald assertions and conclusory allegations are insufficient to support habeas relief); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). To be sure, during sentencing, the prosecutor's arguments were very short and focused on the vicious nature of the offense and that the jury should not accept Gray's excuses for his behavior. The prosecutor's opening argument at sentencing is approximately one transcript page in length. She pointed out the impact on the victim, the victim's testimony describing how Petitioner choked, kicked, stomped and sprayed the victim; and then asked for a fifteen-year sentence. (10/28/2019 Tr. at 247-48). In rebuttal, the prosecutor responded

---

[12] *See Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005) ("even structural errors are subject to state procedural bars."); *Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th Cir. 2004) ("the procedural default doctrine does not seek to distinguish claims of trial error from claims of structural error. Rather, the doctrine serves to distinguish claims that were raised before the state courts from claims that the state courts had no opportunity to consider. The procedural default doctrine is 'grounded in concerns of comity and federalism.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)).

to defense counsel's argument seeking to mitigate his punishment by referencing testimony during the sentencing that Petitioner had observed his father abuse his stepmother when he was a child. The prosecutor argued that Petitioner made the choice to be abusive and not to seek help over his anger management problems; and that Petitioner's choices were not an excuse for his behavior. (*Id.* at 250-51). This argument consumed less than one full page of the transcript.

Petitioner cites no authority for his labeling his prosecutorial misconduct claim as structural error, and indeed he fails to admit that prosecutorial misconduct has been determined to be subject to harmless error analysis. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (applying Fed. R. Crim. P. 52(a)). Structural error has been found in very few instances and they do not include prosecutorial misconduct.

> A "structural" error, we explained in *Arizona v. Fulminante*, is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," 499 U.S. at 310. We have found structural errors only in a very limited class of cases: *See Gideon v. Wainwright*, 372 U.S. 335 (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510 (1927) (lack of an impartial trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins*, 465 U.S. 168, (1984) (the right to self-representation at trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (the right to a public trial); *Sullivan v. Louisiana*, 508 U.S. 275, (1993) (erroneous reasonable-doubt instruction to jury).

*Johnson v. United States*, 520 U.S. 461, 468 (1997).[13] Indeed, improper remarks by a prosecutor about a defendant's right to remain silent do not constitute a structural error requiring automatic reversal. *Brecht v. Abrahamson*, 507 U.S. 619, 629, 638 (1993) (characterizing a violation of the right to silence as a trial error, rather than a structural one).

---

[13] In 2008, the United States Supreme Court clarified their jurisprudence and held "that various forms of instructional error are not structural but instead trial errors subject to harmless-error review." *Hedgpeth v. Pulido*, 555 U.S. 57, 60-61 (2008) (citing *Neder v. United States*, 527 U.S. 1 (1999) (omission of an element of an offense); *California v. Roy*, 519 U.S. 2 (1996) (per curiam) (erroneous aider and abettor instruction); *Pope v. Illinois*, 481 U.S. 497 (1987) (misstatement of an element of an offense); *Rose v. Clark*, 478 U.S. 570 (1986) (erroneous burden shifting as to an element of an offense).

## V. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss, Dkt. No. 8, must be granted, Petitioner's Motion to Vacate, Dkt. No. 14, must be denied, and the Petition will be dismissed by an order to be issued with this Memorandum Opinion.

Entered this 26 day of June 2024.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge